## Commonwealth v. Moose Lodge

*Joseph L. Cohen,* for Commonwealth.

*Budding & Yost,* for defendants.

ATKINS, J., August 25, 1958.—This case involves the construction of the Act of May 23, 1945, P. L. 962, 35 PS §655.1. The material portion of the statute provides as follows:

"From and after a period of six months after the effective date of this act, it shall be unlawful for any proprietor to conduct or operate a public eating or drinking place without first obtaining a license, as herein provided."

The act then provides for the inspection of the premises and the issuing of a license upon payment of a fee.

Section 1 of the act, as last amended by the Act of September 26, 1951, P. L. 1462, sec. 1, contains this definition:

"The words 'public eating or drinking place' shall mean any place within this Commonwealth where food or drink is served to or provided for the public with or without charge: provided, however, that nothing herein contained shall apply to dining cars operated by a railroad company in interstate commerce."

The facts have been stipulated by counsel for the Commonwealth and for defendants. The stipulation, in substance, sets forth that defendant, Loyal Order

of Moose of the World, Lodge No. 148, is a properly chartered Pennsylvania nonprofit corporation, conducting its business and activities in the City of York, at 159 South George Street, and that the corporation has 2900 members. Defendant, Allen C. Spangler, is an adult individual residing at 28 South Sumner Street, York, and is the secretary and steward of the corporation. The lodge holds a club liquor license issued by the Pennsylvania Liquor Control Board and does serve food and refreshments, maintaining a kitchen and all facilities to engage in these activities. The only persons admitted to the lodge premises are members of the lodge and guests of members. Persons are admitted to the membership of the lodge only in accordance with the constitution and bylaws of the corporation of the Supreme Lodge of the Moose.

In March 1957, the Health Department of the City of York, the licensing body provided by the act of assembly above referred to, mailed an application for a license to operate a public eating and drinking place to the lodge, which application was not completed nor returned. On May 6, 1957, a health officer of the City of York called at the lodge premises, introducing himself as a health inspector, and was advised by an employe to go ahead and inspect the premises. While the inspection was in progress, defendant Spangler appeared and advised Officer Fishel that the lodge did not apply for a license, as required of public eating and drinking places, for the reason that the lodge did not operate a public eating and drinking place but was a privately owned and operated place and, therefore, not subject to the Act of 1945, supra. No application was filed by the lodge for a license under the act for the year 1957 and no license was granted to it.

On October 1, 1957, a summary proceeding, under the provisions of the act, was instituted before an alderman in the City of York, and on October 7, 1957,

a hearing was had before the alderman, which resulted in a finding of guilty by the alderman and the imposition of a fine of $25 and costs on defendants. An appeal was taken to this court by defendants.

The case presents a very narrow issue: Namely, is or is not the lodge conducting a public eating and drinking place within the meaning of the act of assembly? Our research has disclosed no cases construing this provision of the act nor has counsel on either side referred us to any such cases in their briefs. Webster's New International Dictionary, 2d Ed., defines "public" as follows:

"The general body of mankind or of a nation, state or community; the people indefinitely."

Under the facts of this case there is no question that the general public is not admitted to the lodge premises and cannot avail themselves of the eating or drinking facilities located therein. The mere fact that the lodge has a substantial membership does not overcome the fact that the membership is a restricted one and that no one may be admitted to membership except upon compliance with the rules and regulations as set forth in the constitution and bylaws of the lodge.

Defendants' counsel refer to the case of Everett v. Harron, 380 Pa. 123 (1955). That is a case where certain individuals, who had been denied admission because of their race to a swimming pool operated by defendants, filed a complaint in equity praying for an injunction restraining defendants from denying their admission to the swimming pool. One of their chief contentions was that a swimming pool constituted a public accommodation and that under section 654 of The Penal Code of June 24, 1939, P. L. 872, they could not lawfully be refused admission to the swimming pool. Defendant, among other things, pointed out that the pool is operated as a club and that membership in the club was a prerequisite to admission to the pool.

The court found as a fact that the club was a mere subterfuge and that its only purpose was to set up a system whereby persons of the Negro race could be excluded by being denied membership in the club, and that for all practical purposes the swimming pool was operated as a public accommodation and, therefore, an injunction was granted restraining defendant from denying admission to plaintiffs. The court in its opinion nowhere indicates that a bona fide private club would be considered in violation of that section of The Penal Code, but based its decision on the fact that the club in that case was not bona fide. There is no indication in this record anywhere that the Loyal Order of Moose is anything other than a bona fide club. There is nothing in the Act of 1945 to indicate that the word "public" shall have assigned to it any meaning than that which is normally contemplated by ordinary usage.

The Commonwealth has cited the case of Brnilivich v. St. George Church, 326 Pa. 218 (1937), indicating that the word "public" may under certain circumstances have a restricted meaning. We do not so interpret the case. We feel it is clearly distinguishable from the situation involved here. That was a proceeding to compel the officials of the church, which was a private corporation organized for purposes of public worship, to permit the burial of one who was not a member of the church in the cemetery operated by the church. The Supreme Court held that the right to burial in a cemetery could be restricted to members of the church and could be denied to those who were not members of the church. This holding in no way restricts the meaning of the word "public." On the contrary, it does recognize the right of private organizations to restrict facilities of the organization to members thereof. If the legislature had intended the term "public eating places" to apply to the eating facilities of private or-

ganizations, it could have easily said so, and while it may be desirable to have such facilities subject to inspection, we cannot extend the act beyond the area included by the legislature.

Defendants have raised an additional question in that they contend that the act cannot be constitutionally applied to a private organization. It is not necessary to discuss that question in this opinion. We feel constrained to hold that the legislature did not intend this act to cover the eating facilities of private organizations and that it does not apply to the eating facilities maintained by the lodge.

We, therefore, enter the following order:

And now, to wit, August 25, 1958 at 9 a.m., defendants, Loyal Order of Moose, Lodge No. 148, and Allen C. Spangler, Secretary and Steward of Lodge No. 148, are adjudged not guilty, and the County of York is directed to pay the costs of prosecution.

An exception is granted to the Commonwealth.

---

The Commonwealth's appeal to the Superior Court was quashed: 188 Pa. Superior Ct. 531.